UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRENDA L. RUTHERFORD,

    Plaintiff,

v.                                    Case No. 04-C-1216

WACKENHUT CORPORATION,
MARK SCHAEFER, and
ANDREA MORISSE,

    Defendants.

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. BACKGROUND**

The plaintiff, Brenda L. Rutherford ("Rutherford"), who is proceeding pro se, commenced this action on December 21, 2004 by filing a complaint naming Wackenhut Corporation ("Wackenhut"), Mark Schaefer, and Andrea Morisse as defendants.[1] Rutherford was employed by Wackenhut as a "Public Service Ambassador" for approximately five years before being terminated on July 6, 2004. Rutherford contends that she was wrongly fired. Although the complaint is not explicit, proceedings in this matter have made it clear that Rutherford maintains that she has a disability, and was not provided a reasonable accommodation for, and was fired because of, her disability, in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

---

[1] Although Mark Schaefer and Andrea Morisse were named as defendants by Rutherford in her complaint, they cannot be held personally liable under the ADA. Both Schaefer and Morisse were supervisors at Wackenhut, and "a supervisor cannot be held liable in his individual capacity under the ADA." *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999). Thus, Wackenhut Corporation is the only proper defendant.

On February 13, 2006, the defendants filed a motion for summary judgment. That motion is now fully briefed and is ready for resolution.

## II. FACTS

Along with their motion for summary judgment, pursuant to Civil Local Rule 56.2, the defendants filed proposed findings of fact. Rutherford did not precisely comply with Civil Local Rule 56.2(b), but she nevertheless addressed the defendants' proposed findings of fact in her response to their motion for summary judgment. Unless otherwise noted, the following facts are undisputed.

Rutherford was employed by the Wackenhut Corporation from approximately July 1999 until the termination of her employment on July 6, 2004. (Defendants' Proposed Findings of Fact and Conclusions of Law ("DPFOF") at ¶ 6.) Rutherford was employed as a "Public Service Ambassador." This position entailed, among other things, "walking all around the downtown area of Milwaukee and handing out brochures and information." (Declaration of Brenda Rutherford ("Pl.'s Resp.") at ¶ 2; Answer at ¶ 2.)

On or about July 3, 2003, Rutherford fell while working and sustained injuries to her ankle, knees, and wrist. Rutherford received medical treatment for her injuries, including surgery and physical therapy. (Pl.'s Resp. at ¶¶ 5-10; DPFOF at ¶ 7.) The parties do not agree on what portion of Rutherford's injuries and treatment is attributable to work related injuries (the defendants do not concede that Rutherford's ankle injury happened at work), but that question is not relevant to the matter at hand. In any event, Rutherford was out of work from October 22, 2003 through April 5, 2004. (Pl.'s Resp. at ¶ 11; Answer at ¶ 4.)

2

Rutherford returned to work on April 5, 2004, and was placed on sedentary duty. When Rutherford first returned to work, she was using a motorized wheelchair. She then progressed to using a walker, and eventually a cane. Sometime not long after her return to work, Rutherford was taken off sedentary duty and resumed her regular duties of walking around downtown. She did these duties with the help of a cane and a brace on her wrist. She also required occasional breaks. (Pl.'s Resp. at pp. 5-6; Answer at ¶ 4.)

On June 9, 2003, Rutherford was examined by Dr. Stephen E. Barron at the request of Wackenhut. Dr. Barron issued a report dated June 22, 2004. The defendants maintain that Dr. Barron cleared Rutherford to return to work without any further restrictions, i.e., without the use of a cane or wrist brace. (DPFOF at ¶¶ 8-9.) Rutherford maintains that Dr. Barron was a "paid for" doctor who says what Wackenhut wants him to say. Rutherford also maintains that Dr. Barron did not listen to her and only examined her for fifteen minutes. (Pl.'s Resp. at p. 6.) Furthermore, Rutherford contends that her doctors did not clear her for return to work without the use of the cane and wrist brace. (Pl.'s Resp. at p. 6.)

On or about June 30, 2004, defendants Andrea Morisse and Mark Schaefer, both of whom were employed by Wackenhut in supervisory roles as to Rutherford, met with Rutherford at the Wackenhut Milwaukee office and informed Rutherford that she would need to report to work no later than July 6, 2004, without the wrist brace or cane. Morisse and Schaefer stated at the meeting that this was in keeping with Dr. Barron's report. (DPFOF at ¶ 10.)

Rutherford reported to work at Wackenhut on July 6, 2004, with a wrist brace and cane. At that time, she refused to perform her job duties at Wackenhut without these devices. As a result, on July 6, 2004, Rutherford's employment with Wackenhut was terminated. (DPFOF at ¶¶ 11-12.)

3

## III.  SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)).  "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'"  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).  To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

4

To determine whether genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

The ADA protects "qualified individuals with a disability" from discrimination in their employment, the hiring process, or promotions. 42 U.S.C. § 12112(a); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111. The term "disability" is defined as "(A) a physical or mental impairment that substantially

5

limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

In order to prevail on her claim, Rutherford must demonstrate that she is a "qualified individual with a disability," and that she was discriminated in her employment because of her disability. The defendants' motion for summary addresses only whether Rutherford is a "qualified individual with a disability." The defendants' argue that Rutherford has not provided evidence establishing that she is disabled under the ADA.

Because Rutherford is the nonmoving party, and because she would bear the burden at trial of establishing that she has a "disability" under the ADA, the question that must be determined is whether, construing all facts in the light most favorable to Rutherford, she has made a sufficient showing to establish that she has a "disability" under the ADA. Stated another way, if the issue of whether Rutherford is disabled, as that term is defined by the ADA, were to go to trial on the record now before the court, would Wackenhut be entitled to judgment as a matter of law? *See Walker v. Abbott Laboratories*, 416 F.3d 641, 645 (7th Cir. 2005).

It is undisputed that Rutherford sustained injuries to her wrist, knees, and ankle. In order to qualify as a disability under 42 U.S.C. § 12102(A), Rutherford must demonstrate that her condition "substantially limits one or more of [her] major life activities." It is clear that walking is a "major life activity." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). "Performing manual tasks" is also a "major life activity." *Id*. at 198.

The term "substantially" means that an individual's limitations in a major life activity must be "considerable" or "to a large degree." *See Toyota*, 534 U.S. at 196. In order to be "substantially limited," an individual must be "so limited in one or more major life activities that she is impaired

6

in her ability to 'perform the variety of tasks central to most people's lives.'" *Rooney*, 410 F.3d at 381 (quoting *Toyota*, 534 U.S. at 201). To be "substantially limited" means that "the individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." *Krocka v. City of Chicago*, 203 F.3d 507, 513 (7th Cir. 2000).

Impairments that interfere in only a minor way with the performance of manual tasks are not enough to establish disability. "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota*, 534 U.S. at 197-98. Moreover, to be substantially limiting, an impairment cannot be a temporary medical condition, but must have an impact that is permanent or long term. *Id.*; *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999).

When determining whether an individual is "substantially limited," the court must consider what the individual is able to do *with* the use of any corrective device or medication he or she may employ. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488 (1999). "[I]f an impaired individual employs measures to mitigate that impairment, such as taking medication or using a prosthetic device, the individual must be evaluated taking into account the ameliorating, or aggravating, effects of the measures on his ability to perform a major life activity." *Krocka*, 203 F.3d at 513. For example, an individual who is not able to walk at all without a medical device such as a walker or cane, will only be considered disabled if, even with the use of the walker or cane, the individual remains substantially limited in his or her ability to walk. *See Sutton*, 527 U.S. at 488.

7

With these standards in mind, I will turn to the evidence that Rutherford has provided regarding her impairments. Rutherford does not specifically state what "major life activities" in which she claims to be substantially limited. In a letter submitted by Rutherford as part of her response to the defendants' motion for summary judgment, Rutherford states, "I have permanent partial disabilities. This [a]ffects my life, I can not run, jump, skip, I can not dance like I love to do. I can not chase my grandchildren around. I can not wear any type of high heels like I could. I need the use of the cane because it keeps me steady, I can not walk more than one half block without my cane." (Pl.'s Resp. (unpaginated letter)) Simply stated, all but one of the activities Rutherford identifies above (i.e., running, jumping, skipping, dancing chasing the grandchildren and wearing high heels) are not "major life activities" (though pleasurable they may be). However, walking is a major life activity.

The large number of medical records that Rutherford submitted along with her response to the defendants' motion for summary judgment contain ample evidence of medical conditions / injuries that affect, or affected at one time, Rutherford's ability to walk. These medical records document an injury to Rutherford's knees as well as multiple courses of treatment for ankle injuries. However, medical evidence of ankle and knee injuries alone do not lead to the conclusion that Rutherford was "substantially limited" in her ability to walk when she was fired from her job at Wackenhut.

Rutherford was fired by Wackenhut on July 6, 2004. A doctor's note signed by Patrick W. Cummings, M.D., and dated July 6, 2004 states that, "[p]atient's restrictions remain in effect until 7/18/04 or next follow-up visit. Patient may work 8 hours per day with rest stops / and or sedentary work. She still requires cane until next evaluation by Dr. Cummings." (Pl.'s Resp. at p. 12.) An

8

instruction sheet which appears to be signed by the same doctor and dated August 3, 2004 states that Rutherford has "permanent" restrictions as follows: "will need cane as needed and rest breaks (10 min) as needed." (Pl.'s Resp. (unpaginated))

Moreover, on another form signed by Dr. Cummings and dated August 16, 2004, Dr. Cummings stated that Rutherford had been released to an 8 hour work day on May 21, 2004, with rest breaks. Dr. Cummings was asked on the form to estimate the "percentage of permanent disability to the member . . . involved," and he answered that there was, "10% PPD to the left ankle" based on "decreased subtalar motion." (Pl.'s Resp. (unpaginated)) In other words, at the time Rutherford was fired, her doctor had cleared her to work a full 8 hour day, at a job that consisted largely of walking around downtown Milwaukee handing out brochures, with the only restrictions being the use of a cane and some rest stops.

The doctor's restrictions are in line with what Rutherford claims she was able to do at the time she was fired. Rutherford states, "I felt that I was doing a good job with my disabilities. I worked myself from 4 hours on the street to longer. Per my doctors orders and restrictions I only needed a few rest breaks. I did need my cane and wrist brace but I could still do my work as before I was hurt at work and had surgeries." (Pl.'s Resp. at p. 6.)

As previously stated, in assessing the degree of any limitation to Rutherford's ability to walk, I must consider what she is able to do *with* her cane, not what she would be able to do without a cane. *See Sutton*, 527 U.S. at 488. And nothing in Rutherford's submissions suggests that, *with* the use of her cane, she is "unable to [walk], or significantly restricted as to the condition, manner or duration under which [she] can [walk], as compared to an average person in the general population." *Krocka v. City of Chicago*, 203 F.3d 507, 513 (7th Cir. 2000). To the contrary, the evidence

9

establishes that, at the time she was fired, Rutherford was able to complete an eight-hour work day that consisted largely of walking, with only a few rest breaks. Her ability to do so (with the use of a cane) forecloses the possibility that Rutherford is "significantly restricted" in her ability to walk as compared to the average person. In the end, based on the information Rutherford has provided, no reasonable fact finder could conclude that Rutherford has an "impairment that substantially limits" her ability to walk.

Rutherford does not fare any better with her wrist injury. It is undisputed that Rutherford had surgery and physical therapy on her wrist. On April 1, 2004, a doctor's note states that Rutherford "was told she could use her hand freely but work light duty, self-paced, and very light weight." (Pl.'s Resp. (unpaginated)) Rutherford was restricted by her doctor to lifting and carrying only 5 pounds with her right hand, and to wearing a splint. (Pl.'s Resp. at p. 8.) In a letter dated June 28, 2004, Lewis Chamoy, M.D., the doctor treating Rutherford for her wrist injury, stated that "based on [Rutherford's] loss of wrist motion, she would have a 20 percent impairment of her right wrist as compared to amputation." (Pl.'s Resp. (unpaginated))

Based on the information provided by Rutherford, no reasonable fact finder could conclude that Rutherford's limitations in the use of her right hand and wrist rise to the level of substantially limiting her in a major life activity. To be sure, limited use of one's wrist and hand might affect the ability to engage in the major life activity of "performing manual tasks." However, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). There is no indication that Rutherford is so limited. She maintains 80% use of her right

10

wrist, and there is no indication that her left wrist or hand are in any way impaired. Such an impairment, even assuming it were permanent, does not rise to the level of a "disability" under the ADA. Simply stated, nothing in the record suggests that the 20% impairment of one of her wrists restricts Rutherford from doing "activities that are of central importance to most people's daily lives."

Furthermore, there is no evidence in the record from which it might be established that Rutherford qualifies as disabled under one of the other methods provided for by 42 U.S.C. § 12101(B) and (C). There is nothing in the record to suggest that Rutherford has a record of an impairment any different than the impairments discussed above. Nor is there anything to suggest that Wackenhut or anyone else regarded Rutherford as having a qualifying impairment. Indeed, it appears that Wackenhut thought that Rutherford had no impairment at all and should return to work without her cane or wrist brace.

In summary, if this matter were to proceed to trial, Rutherford would bear the burden of establishing that she is a "qualified person with a disability" as that term is defined by the ADA. In response to the defendants' motion for summary judgment, Rutherford has not submitted any evidence from which a reasonable fact-finder could conclude that her impairments meet the standards of a "disability" as that term is specifically defined by the ADA. As a result, there exists no genuine issue of material fact, and the defendants are entitled to judgment as a matter of law.

Let me make one final comment. I am mindful that this decision will not be welcomed by Rutherford. This is because she feels that she was fired by Wackenhut for an unfair reason, i.e., that she should not have been told to report to work without her brace and cane. And I cannot say that she is wrong to feel that way (although Wackenhut certainly has a legitimate interest in seeing that

11

she does not use her cane if to do so might cause her to be more likely to slip and re-injure herself).

However, in Wisconsin, unless an employer and employee specifically agree otherwise, the employee serves at the will of the employer. *See Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 269 (7th Cir. 1995). This means that an employer can fire an employee for any reason which is not prohibited by law, even if that reason is not "fair." One court described an at-will employee as follows: "in fact he was an employee at will who could be fired for any reason not forbidden by . . . law, such as failing to trim his mustache or eating with his fork in his left hand." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767 (7th Cir. 2006). In the end, and for all of the reasons discussed above, Rutherford has not provided evidence from which it could be reasonably concluded that she is a member of the class of persons protected by the Americans With Disabilities Act; stated another way, she is not "disabled" within the meaning of that law. Therefore, even if her termination was "unfair," it was not prohibited by the ADA.

In conclusion, and for all of the foregoing reasons, the defendants' motion for summary judgment will be granted and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 25th day of April 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

12